SOUTHERN CEMENT STONE COMPANY v. LOGAN COAL AND SUPPLY COMPANY.

There was no error in granting a nonsuit in this case.
MAY 16, 1913.

Equitable petition. Before Judge Conyers. Glynn superior court. May 21, 1912.

*F. H. Harris* and *R. D. Meader,* for plaintiff.

*Bolling Whitfield,* for defendant.

LUMPKIN, J. A contracting company sought to enjoin another contractor from laying certain sidewalks in the City of Brunswick. The plaintiff claimed that it had the right to do such work, by reason of contracts with the property owners in front of whose property the sidewalks lay. The defendant claimed the right under an award of the contract by the city. On the hearing of the application for temporary injunction by the presiding judge, he granted it as to certain parts of the sidewalk and refused it as to the rest; but required the defendant to give a bond to pay the plaintiff any profits it might lose, and which on the final trial it might be shown to be entitled to recover. The case was brought to this court, and the writ of error dismissed. 136 *Ga*. 475 (71 S. E. 915). The

plaintiff then amended its pleadings so as to seek to have a recovery on the bond.   On the trial, at the close of the evidence introduced by the plaintiff, the court granted a nonsuit, and the plaintiff excepted.

The fallacy which underlies the entire contention of the plaintiff is that it seeks to set up grounds of complaint which possibly the property owners might have made, but did not, and which do not give to the plaintiff any right of recovery.   Under the city charter, power was conferred on the mayor and aldermen to require property owners to pave sidewalks in front of their property.   By the act of 1905 (Acts 1905, pp. 680, 685) it was provided that if the owner should refuse to begin the work within thirty days after he should be served with a copy of the order requiring it, or, after having begun such work, should fail to complete it within a period of time to be designated by the mayor and aldermen, unless they should grant further time, they could have the work done and collect the cost thereof by execution.   It provided that the notice should be served on the property owner "by the marshal or any other officer of said city."   On December 12, 1907, the mayor and council adopted an ordinance requiring the sidewalks to be paved, and provided that the work should begin within thirty days and be completed in ten days thereafter.   Nothing further was done until 1909.   On April 8, 1909, a resolution was adopted requiring notices to be issued and served on property owners, requiring them to proceed with the work.   Notices were issued and were served by a special officer attached to the police department.   The property owners did nothing except that a number of them (perhaps all) had a verbal understanding with an officer of the plaintiff, that, whenever the city required the work to be done, the plaintiff would do it.   The city had already required it, but no work was done. In 1910 the mayor and council proceeded to let out the work by contract.   The plaintiff was a bidder, and failed to get the work. Its officer testified that the city attorney, in a conversation with him, advised him that he could go on with his private contracts without regard to the letting out of the work by the city, if such contracts were made before the awarding and signing of the city contract.   This seems to have been an unofficial expression of opinion by the city attorney in the course of a conversation, and was not binding on the city.   In his brief the city attorney says

that it "appears to have been 'obiter dictum,' as it were." While
the city was advertising for bids and preparing to make the award,
the plaintiff's officer went to the property owners and obtained a
written agreement that they "have contracted with the Southern
Cement and Stone Company to pave such abutting property in
accordance with city specifications for and at the same price that
has to be paid for the Norwich Street paving [the street involved
in the controversy], when contract is awarded by the city." Thus
the plaintiff was to look to the award of the city to fix the price,
but not to fix the successful bidder.

The plaintiff attacked the ordinance as unreasonable and the
notice as not having been served by a proper officer, and as allowing
more time than the ordinance specified. A vital trouble with this
contention is that the property owners made no objection, but rec-
ognized the notice and acted on it as valid; and the plaintiff's bill
of exceptions states that each of them testified that "it becoming
necessary by requirement of the municipal authorities of the City
of Brunswick by notice served by the Mayor and Council of the
City of Brunswick under provisions of the city charter and city
ordinance of December 12, 1907. . . To that end the witness
made and entered into a contract with the plaintiff," etc. Thus
the property owners raised no objection to the notice, and it was
recognized as sufficient to require them to have the pavement laid.
The plaintiff claims to have obtained the contract by reason of the
notice, but now attacks it.

Again, the only evidence tending to show that the time allowed
was unreasonable was that of the president of the plaintiff. He
testified, that "it would be practically impossible, considering the
fact that it takes thirty days, after cement tiling has been placed
in mould, for them to cure sufficiently to lay; that no cement tiling
contractor anywhere in this part of the country has a force suffi-
cient to complete all such work in ten days after starting it, nor is
the labor skilled in such work to be obtained so as to do the same
in said period." It will be seen that he seeks to measure the time
within which a municipality may require citizens to pave sidewalks,
by the convenience or needs of a single contractor who may obtain
agreements from all of the property owners, and without previous
preparation as to materials or labor. If he should obtain promises
from substantially all of the property owners of the city, he might

not be able to perform the contract in months or years. But this is not a proper test. The plaintiff did not begin work on the side-walk at all until after advertisement for bids by the city, and shortly before the award of the contract to another.

It is useless to discuss the other points raised. They are equally without merit. The plaintiff made out no prima facie case, and the award of a nonsuit was proper.

<div align="right">

*Judgment affirmed. All the Justices concur.*